FILED

FEB 20 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1  Edward D. Fagan, Pro Se
2  590 NE Wavecrest Way
3  Boca Raton, FL 33432
4  Tel. (561) 757-5432
5  Email: faganinternational@gmail.com
6        Applicant Pro Se
7
8              UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA
10
11        CASE # _____
12
13        **CV 19   80   044MISC**
14  In Re:
15      Application of EDWARD D. FAGAN          |
16      pursuant to 28 U.S.C. § 1782 for Judicial Assistance in |
17      obtaining evidence from WELLS FARGO BANK |
18      for use in a Foreign Tribunal and Proceeding |
19  _____ |
20
21
22
23              **APPLICATION FOR JUDICIAL ASSISTANCE**
24      **PURSUANT TO 28 U.S.C. § 1782 TO AID IN FOREIGN PROCEEDING**
25
26              EDWARD D. FAGAN (hereinafter "Applicant"), acting as a pro se Applicant,

27  hereby makes the following application for limited judicial assistance pursuant to 28 U.S.C. §

28  1782 to aid in Foreign Proceeding(s) which is now pending before and being investigated by the

29  South African Police Services – Serious Commercial Crimes Unit - SAPS # 3471/1/2019 - and

30  hereby requests an order directing production of documentary evidence that is in the custody,

31  possession and/or control of Witness Bank WELLS FARGO (hereinafter "Witness Bank" or

32  WELLS FARGO) which is found in and which does business in this District, and respectfully

33  shows the Court the following:

34

I.     **INTRODUCTION**

1. This Application for Judicial Assistance is to obtain evidence as allowed pursuant to Section 1782(a), and the US Supreme Court in *Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) so that the evidence obtained from persons and entities residing and/or found within this judicial district so that evidence " . . . for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation."

2. As explained below, Applicant, his partners and predecessors (hereinafter collectively referred to as "Applicant") are victims of internet fraud and crimes, which are a new twist on the long standing "Nigerian Scams", involving inheritance monies. [1]

3. Monies involved in the fraud and crimes against Applicant were funneled through accounts that were opened and maintained with the Witness Bank – WELLS FARGO – which is located in and headquartered in this District.

4. The evidence sought is for use in the Foreign Proceeding that is pending before and being investigated by the South African Police Services – Serious Commercial Crimes Unit - SAPS # 3471/1/2019.  That complaint is SAPS # 3471/1/2019 and a copy of the docket sheet is attached as Exhibit 1.

5. The South African Police Services investigation has been assigned to Captain Eric Chiloane of the South African Police Services – Serious Commercial Crime Unit, at

---

[1]     Applicant acquired and is the assignee and owner of 100 % of the rights and interests of his partners and predecessors, including but not limited as relates to this Application Russ Daneluk and Rick Quigley.  Attached collectively as Exhibit 2.

1     419 Unit 22 Buthongo Building, Car Visagie and Andries Streets Pretoria, Email

2     address below ChiloaneEric@saps.og.za

3   6. The Applicant has been requested to and will return to South Africa to provide

4     additional information so that the South African Police Services – Serious

5     Commercial Crime Unit – which will in turn share the information with and that they

6     will share that information with the South African Department of Justice and South

7     Africa's Branch of Interpol, who will also be investigating and who will prosecute all

8     the persons who were behind the crimes against Applicant and who actually received

9     the monies that were transferred through the Witness Bank – WELLS FARGO.

10

11 II.  **FACTS RELATED TO THE APPLICATION**

12   1. Applicant is a victim to a scheme that involved electronic communications sent to an

13     American Woman from Idaho (hereinafter "The Idaho Woman") who was allegedly

14     an heir to inheritance monies and assets that were held in Nigeria, but which could be

15     transferred to the United States.

16   2. The inheritance monies and assets to which The Idaho Woman claimed entitlement

17     allegedly came from her deceased father (hereinafter "Inheritance Monies") and were

18     allegedly lawfully earned during the course of her father's contracting business(es) in

19     Africa.

20   3. The Idaho Woman came to know a Canadian national who she allegedly met from her

21     mother.

22   4. The Idaho Woman and The Canadian National supposedly became engaged.

1    5. The Canadian National was a relative of one of Applicant's predecessors.

2    6. The Idaho Woman and The Canadian Man (and later Applicant) were told that in

3    order to get The Inheritance Monies to be transferred certain monies for fees,

4    services, customs, duties and other charges had to be paid.

5    7. Prior to approaching Applicant, The Idaho Woman and The Canadian National

6    allegedly exhausted all their resources and were unable to complete the transfer.

7    8. They then approached Applicant, to induce them to provide additional assistance,

8    documents and monies.

9    2. Applicant was offered rights and interests to The Inheritance Monies assuming

10    Applicant would provide the additional monies, resources and assistance to get The

11    Inheritance Monies transferred into account(s) where they could then be legally

12    distributed to the interested persons.

13    3. Applicant provided with documents in which The Idaho Woman purportedly

14    transferred her interests in The Inheritance Monies to The Canadian National.

15    4. On their face, the documents appeared to be legitimate and there appeared to be no

16    reason to doubt that The Inheritance Monies existed and could be legally transferred.

17    5. At all times, Applicant believed that The Inheritance Monies actually existed, the

18    rights to The Inheritance Monies were legitimate and he could lawfully acquire an

19    interest in the monies and assets.

20    6. At all times, Applicant was committed to the fact that before anyone was entitled to

21    receive and take any of The Inheritance Monies that all taxes, customs duties,

22    transfer fees and other government and regulatory compliance requirements were

1  met and that when the money was actually transferred, it would be clean and not the

2  subject of any illegal or unlawful activity.

3  7. Applicant considered this to be a lawful business investment to which they would

4  contribute time, energy and monies in exchange for the return of The Inheritance

5  Monies.

6  8. From 2016 to present, Applicant was solicited to assist in getting The Inheritance

7  Monies lawfully transferred because The Idaho Woman and The Canadian National

8  had exhausted all their resources, were unable to complete the transfer and needed

9  additional assistance and monies.

10  9. The American woman and The Canadian National gave Applicant documents and

11  information that was used by the scheme's coordinators and which to documents and

12  information were intended to convince Applicant about the existence of the alleged

13  inheritance monies and the bona fides of what the scheme's coordinators said was

14  needed to be done in order to get the release of The Inheritance Monies.

15  10. Applicant was told (verbally and in writing) that what was needed to ensure the

16  transfer of The Inheritance Monies was the payment of various fees, invoices, costs

17  or other monies to persons and entities who had accounts at various banks in the

18  United States.

19  11. Applicant was presented with various documents all of which were transmitted by

20  email or text messages and in which the domain names, email addresses and

21  documents themselves appeared on their face to be authentic.

22  12. In reality, the documents and information presented to Applicant were fakes and

1      were part and parcel of an elaborate scheme designed and intended to trick Applicant

2      to transfer monies to accounts throughout the United States and as relates to this

3      Application, to accounts that were maintained by the Witness Bank – WELLS

4      FARGO - in California.

5    13. Some of the persons who are the subject of the investigation pending before and

6       being investigated by the South African Police Services – Serious Commercial

7       Crimes Unit - SAPS # 3471/1/2019 have already been identified.

8    14. The identity of other persons and entities as well as the persons / entities behind the

9       scheme can only be discovered through the information subpoenaed from Witness

10      Bank – WELLS FARGO – and those persons relationships to the persons in South

11      Africa are important to the investigation of South African Police Services – Serious

12      Commercial Crimes Unit - SAPS # 3471/1/2019.

13    15. The persons involved created (i) fake domain names disguising themselves as banks,

14      financial institutions and government agencies; (ii) fake government agency

15      letterheads and documents; and (iii) fake bank and financial institution letterheads

16      and documents.

17    16. By way of example, attached are examples of the fake emails originating from fake

18      domain addresses and transmitting forged documents:

19       a. Exhibit 3 - Email from Domain Name – "draftissue.com" – masquerading as

20         a "Chase Bank" domain and email name / address.   In reality, the domain

21         name "draftissue.com" and the email addresses associated with it are / were

22         not Chase Bank emails, the documents being transmitted were not authentic

1    Chase documents and the domain was owned and operated out of South

2    Africa by the woman who is the subject of the pending criminal investigation

3    in South Africa.

4    b. Exhibit 4 – proof that the domain name "draftissue.com" is NOT a Chase

5     Bank domain name but is owned and operated by the South African woman

6     who is the subject of the pending criminal investigation in South Africa and

7     who is one of the wrongdoers in the internet crimes committed against

8     Applicant.

9    c. Exhibit 5 - Email from Domain Name – "fddic.com" – masquerading as the

10     United States Government's Federal Deposit Insurance Corporation ("FDIC")

11     domain and email name / address.   In reality, the domain name "fddic.com"

12     and the email addresses associated with it are / were not official US

13     Government FDIC emails, the documents being transmitted were not

14     authentic US Government FDIC documents and the domain was owned and

15     operated out of South Africa by the woman who is the subject of the pending

16     criminal investigation in South Africa.

17    d. Exhibit 6 – proof that the domain name "draftissue.com" is NOT a Chase

18     Bank domain name but is owned and operated by the South African woman

19     who is the subject of the pending criminal investigation in South Africa and

20     who is one of the wrongdoers in the internet crimes committed against

21     Applicant.

22   17. Using the fake, forged and false documents, tricked Applicant into believing that The

1    Inheritance Monies are / were legitimate and could be transferred.

2    18. These fake, forged and false documents purportedly authenticated The Inheritance

3    Monies and "confirmed" that The Inheritance Monies were held by banks or

4    financial institutions oversees which will transfer the inheritance assets to banks or

5    financial institutions in the United States.

6    19. The above fake forged and false documents were used to get Applicant to transfer the

7    monies to the WELLS FARGO accounts as set forth in par. 21 below.

8    20. From 2016 to present, Applicant transferred millions of dollars in an effort to secure

9    The Inheritance Monies, which combined were alleged to have been in excess of

10    forty-seven million dollars (47,000,000.00 USD).

11    21. As relates to The Witness Bank – WELLS FARGO – the following transfers were

12    made into WELLS FARGO accounts (Acct # 2976547766 – beneficiary named as

13    Ibrahim Muritala; Acct # 5927513193 – beneficiary named as Fatimoh Adefabi and

14    Acct # 1271896571 – beneficiary named as Olaywola Oladayo). The dates and the

15    amounts of the transfers are as follows:

16        a.  Transfers to Acct # 2976547766 – beneficiary named as Ibrahim Muritala –

17            (i) December 12, 2016 - $5,000.00; (ii) January 12, 2017 - $ 14,000.00; (iii)

18            January 26, 2017 - $ 11,000.00; (iv) February 20, 2017 - $ 8,375.00; (v)

19            March 6, 2017 - $ 4,500.00; (vi) March 20, 2017 - $ 15,500.00 and (vii)

20            March 22, 2017 - $ 17,500.00

1          b.   Transfers to Acct # 5927513193 – beneficiary named as Fatimoh Adefabi –

2               (i) March 2, 2017 - $ 15,000.00; (ii) March 3, 2017 - $ 15,000.00 and (iii)

3               March 3, 2017 - $ 7,500.00

4          c.   Transfers to Acct # 1271896571 – beneficiary named as Olaywola Oladayo –

5               (i) November 15, 2017 - $7,000.00 and (ii) November 20, 2017 - $ 9,245.00

6    22. Each time Applicant was told to send the money to the above WELLS FARGO

7        accounts, it was supposed to be to secure the release of The Inheritance Monies in

8        which Applicant acquired an interest and were helping to secure the patriation of the

9        assets and the payment of all taxes, customs and duties related to the transfer of

10       inheritance assets.

11   23. Applicant was told by the South African Police Services – Serious Commercial

12       Crimes Unit – that one of the best ways to find who is to be prosecuted for fraud and

13       crimes, is to follow the money that was, in part, transferred to / through the accounts

14       at the Witness Bank – WELLS FARGO.

15   24. Applicant has no recourse or ability on his own – without the relief granted in this

16       Application - to be able to present the South African Police Services – Serious

17       Commercial Crimes Unit – with the account information to identify the person(s) or

18       entities, who/which are behind this massive internet fraud and to whom the monies

19       were transferred AFTER they left the above referenced Witness Bank – WELLS

20       FARGO – accounts.

21   25. Applicants therefore seeks to serve subpoenas upon the Witness Bank WELLS

22       FARGO for the limited information related to the three specific accounts and 12

1    different transfers that occurred between December 2016 and November 2017.

2    26. This application seeks ONLY information related to above referenced 12 transfers

3    through the above three accounts from December 2016 to November 2017 (as

4    identified in Par. 21) at The Witness Bank WELLS FARGO.

5    27. The Witness Bank WELLS FARGO should have the information related to above

6    referenced 12 transfers through the above three accounts from December 2016 to

7    November 2017 (as identified in Par. 21) and specifically where the monies were

8    transferred and/or by whom the monies were withdrawn.

9    28. This is all information that the South African Police Services – Serious Commercial

10    Crimes Unit – suggested that Applicant try to get for them.

11    29. Applicant is not seeking to circumvent evidence gathering laws or procedures in

12    South Africa.

13    30. Applicant is engaged in a fishing expedition.

14    31. Applicant believes that this application is the best and fastest way to obtain evidence

15    needed to assist the South African Police Services – Serious Commercial Crimes

16    Unit – investigation and ultimate prosecution of the persons who were behind the

17    internet fraud and scheme and who will be shown to have directly received and

18    benefitted from the monies that were transferred through the above referenced 12

19    transfers through the above three accounts from December 2016 to November 2017

20    (as identified in Par. 21) at The Witness Bank WELLS FARGO.

21    32. Applicant believes that granting the relief requested presents no hardship or burden

22    to The Witness Bank WELLS FARGO because the evidence is in their possession in

1          this district and any electronically stored evidence can easily be produced from their

2          servers, computer stored files and databases in this district.

3      33. Applicant believes that granting the relief requested on an ex-parte basis is

4          appropriate does not affect The Witness Bank WELLS FARGO or the named

5          beneficiaries in the above referenced 12 transfers through the above three accounts

6          from December 2016 to November 2017 (as identified in Par. 21) as this request is

7          only to grant the issuance of subpoenas to which a Motion to Quash or Objections

8          may be filed.  See Macquarie Bank I, 2014 WL 7706908, at *1 (citing In re Letters

9          Rogatory from Tokyo Dist., Tokyo, Japan, 539 F.2d 1216, 1219 (9th Cir. 1976));

10        IPCom GMBH & Co. KG v. Apple Inc., 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014)

11        ("It is common for parties to file ex parte applications, as parties will be given

12        adequate notice of any discovery taken pursuant to the request and will then have the

13        opportunity to move to quash the discovery or to participate in it." (footnote and

14        quotation omitted)).

15      34. Applicant believes that granting this application is consistent with the principles of

16        28 U.S.C. § 1782 and Fed R. Civ. P Rule 26. [2]

17

---

[2]    28 U.S.C. § 1782 provides that testimony shall be taken, and documents / things produced in accordance with the Federal Rules of Civil Procedure).  Fed. R. Civ. P. 26(d) provides that a district court may authorize early discovery for the parties' and witnesses' convenience and in the interests of justice. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL 4055667, at *2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL 3419189 (N.D. Cal. 2010) (*applicant should be given opportunity through discovery to identify unknown persons/entities*) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980); Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275-77 (N.D. Cal. 2002) and Columbia Ins. Co. v. Seescandy.com, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999) (*factors to be considered when establishing good cause to learn the identity of an unknown entity through early discovery).

1
   **II.**     **WITNESS BANK IS FOUND IN THIS DISTRICT**

2
       The Witness Bank WELLS FARGO maintains its headquarters at 420 Montgomery

3
       Avenue, San Francisco, CA 94163 in this District. See http://www.corporate-office-

4
       headquarters.com/wells-fargo--company.

5
6
   **III.**    **WITNESS WELLS FARGO IS  NOT A PARTY OR TARGET OF THE FOREIGN**
7
   **PROCEEDING / INVESTIGATIONS**
8
9
       The Witness Bank WELLS FARGO is not a party, nor is it in privy, with any other party

10
       in the investigations and proceedings by the South African Police Services – Serious

11
       Commercial Crimes Unit.

12
13
   **IV.**     **THE APPLICATION IS CONSISTENT WITH SUPREME COURT PRINCIPLES**
14
15
     1.  The application is consistent with the principles and standards set forth in *Intel Corp.*

16
         *v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); Consorcio Ecuatoriano*

17
         *de Telecommunicaciones S.A. v. JAS Forwarding (USA), Inc., No. 11-12879, 2012*

18
         *WL 2369166 (11th Cir. June 25, 2012); see In re Clerici, 481 F.3d 1324, 1331 (11th*

19
         *Cir. 2007); United Kingdom v. United States, 238 F.3d 1312, 1319 (11th Cir. 2001);*

20
         *Kulzer v. Esschem. Inc., 390 Fed. Appx. 88, 91 (3d Cir. 2010);* The Ninth Circuit has

21
         held that applications for subpoenas pursuant to § 1782 may be filed *ex parte* because

22
         "[t]he witnesses can . . . raise[] objections and exercise[] their due process rights by

23
         motions to quash the subpoenas." *In re Letters Rogatory from Tokyo Dist., Tokyo,*

24
         *Japan, 539 F.2d 1216, 1219 (9th Cir. 1976).*

25
     2.  Further, as reflected by the language of § 1782, its purpose is to provide federal court

1   assistance in gathering evidence for use in a foreign tribunal. *See Intel Corp. v.*

2   *Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004); and Schmitz v. Bernstein*

3   *Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004)* (§ 1782 has "twin aims,"

4   i.e., "providing efficient means of assistance to participants in international litigation

5   in our federal courts and encouraging foreign countries by example to provide similar

6   means of assistance to our courts") (internal quotation marks omitted).

7

8   **V.   EVIDENCE SOUGHT IS SPECIFIC/RELEVANT TO FOREIGN**

9   **PROCEEDINGS**

10   1.   The evidence sought in this Petition is limited.  It requests only specific information

11   related to the above referenced 12 transfers through the above three accounts from

12   December 2016 to November 2017 (as identified in Par. 21).

13   2.   The evidence sought will be provided to the South African Police Services – Serious

14   Commercial Crimes Unit – so that they can identify and prosecute the person(s) or

15   entities, who/which are behind this massive internet fraud and to whom the monies

16   were transferred AFTER they left the above referenced Witness Bank – WELLS

17   FARGO – accounts.

18

19   **VI.   EX-PARTE APPLICATION PRESERVES WITNESS BANK (AND ACCOUNT**
20   **HOLDER) RIGHTS TO RAISE OBJECTIONS TO SUBPOENA VIA MOTION**
21   **TO QUASH**
22
23   1.   In general, ex parte requests are disfavored and mostly limited to emergency

24   situations because such requests disrupt and undermine the adversarial system on

---

1       which the Court generally operates. In re Judicial Assistance Pursuant to U.S.C.

2       Sec. 1782 ex rel. Macquarie Bank Ltd. (Macquarie Bank I), 2014 WL 7706908, at

3       *1 (D. Nev. June 4, 2014); In re Intermagnetics Am., Inc., 101 B.R. 191, 192-93

4       (C.D. Cal. 1989).

5    2.  Nonetheless, § 1782 petitions are regularly reviewed on an ex parte basis. See

6       Macquarie Bank I, 2014 WL 7706908, at *1; In re Republic of Ecuador, 2010 WL

7       3702427, *2 (N.D. Cal. Sept. 15, 2010).

8    3.  Consequently, orders granting § 1782 applications typically only provide that

9       discovery is "authorized," and thus the opposing party may still raise objections

10      and exercise its due process rights by challenging the discovery after it is issued

11      via a motion to quash, which mitigates concerns regarding any unfairness of

12      granting the application ex parte. See Macquarie Bank I, 2014 WL 7706908, at *1

13      (citing In re Letters Rogatory from Tokyo Dist., Tokyo, Japan, 539 F.2d 1216,

14      1219 (9th Cir. 1976)); IPCom GMBH & Co. KG v. Apple Inc., 61 F. Supp. 3d

15      919, 922 (N.D. Cal. 2014) ("It is common for parties to file ex parte applications,

16      as parties will be given adequate notice of any discovery taken pursuant to the

17      request and will then have the opportunity to move to quash the discovery or to

18      participate in it." (footnote and quotation omitted)).

19    4.  Petitioner only seeks the issuance of the subpoena which is necessary to compel

20      the Witness Bank to produce the account information.

5.  In the event the Witness Bank and/or its account holders object to the requested production, their rights are preserved, and they can file a Motion to Quash after the subpoenas have been authorized and served on the Witness Bank.

## VII.  PETITION IS MADE IN COMPLIANCE WITH 28 U.S.C. § 1782 REQUIREMENTS, CIRCUIT PRECEDENT & SHOULD BE GRANTED

### A.  The Requirements of Section 1782 and Subpoenas Have Been Met

1.  28 U.S.C. § 1782(a), which provides:

*The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, <u>including criminal investigations conducted before formal accusation.</u>   The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other*

1          *thing produced, in accordance with the Federal Rules of Civil Procedure.*

2                                    *Emphasis added*

3      2.  Since 1948, "Congress [has] substantially broadened the scope of assistance federal

4          courts could provide for foreign proceedings," pursuant to § 1782. *Intel, 542 U.S. at*

5          *247-48.*

6      3.  The use of *ex parte* applications is widespread and, in many cases, unremarked upon

7          (and thus approved of *sub silentio*). *See, e.g., In re Request from UK Pursuant to*

8          *Treaty Between Gov't of U.S. & Gov't of UK on Mut. Assistance in Criminal Matters*

9          *in the Matter of Dolours Price*, 685 F.3d 1, 6 (1st Cir. 2012), *cert. denied*, 133 S. Ct.

10         1796 (2013); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 78 (2d

11         Cir. 2012); *In re Consorcio Ecuatoriano de Telecommunicaciones S.A. v. JAS*

12         *Forwarding (USA), Inc.*, 685 F.3d 987, 992 (11th Cir. 2012); *In re Clerici*, 481 F.3d

13         1324, 1329 (11th Cir. 2007).

14     4.  "The history of § 1782 reveals Congress' wish to strengthen the power of district

15         courts to respond to requests for international assistance." *Lo Ka Chun v. Lo To, 858*

16         *F.2d 1564, 1565 (11th Cir. 1988).*

17     5.  Congress has granted the district courts broad discretion in granting judicial

18         assistance under § 1782. *In re Application of Consorcio Ecuatoriano de*

19         *Telecommunicaciones S.A., 2012 WL 2369166, at *21 (11th Cir. 2012); In re Clerici,*

20         *481 F.3d 1324, 1331 (11th Cir. 2007); United Kingdom v. United States, 238 F.3d*

21         *1312, 1319 (11th Cir. 2001).*

22     6.  The district court has authority to grant § 1782 application for judicial assistance if

1      the following statutory requirements are met: (1) request must be made "by a foreign

2      or international tribunal," or by "any interested person"; (2) request must seek

3      evidence, whether it be the "testimony or statement" of a person or the production of

4      "a document or other thing"; (3) evidence must be "for use in a proceeding in a

5      foreign or international tribunal"; and (4) person/entity from whom/which discovery

6      is sought must reside and be found in the district of the district court ruling on the

7      application for assistance. 28 U.S.C. § 1782(a); *In re Clerici, 481 F.3d at 1332, and*

8      *In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at \*15.*

9    7.  Once the statutory requirements have been satisfied, the district court should consider

10      the following factors in deciding whether to exercise the discretion granted under §

11      1782: (1) whether "the person from whom discovery sought is a participant in the

12      foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent

13      as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of

14      the foreign tribunal, the character of the proceedings underway abroad, and the

15      receptivity of the foreign government or the court or agency abroad to U.S. federal

16      court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to

17      circumvent foreign proof-gathering restrictions or other policies of a foreign country

18      or the United States"; and (4) whether the request is otherwise "unduly intrusive or

19      burdensome." *In re Clerici, 481 F.3d at 1334 (quoting Intel, 542 U.S. at 264-65).*

20    8.  The Supreme Court has held that § 1782 does not contain a "foreign-discoverability

21      requirement" – i.e., there is no requirement that the information sought be

22      discoverable under the law governing the foreign proceeding. Intel, 542 U.S. at 253.

1    The Court has further held that there is no requirement that a § 1782 applicant show

2    "United States law would allow discovery in domestic litigation analogous to the

3    foreign proceeding." Id. at 263.

4    9.   Section 1782(a) further "directs judges to provide discovery assistance pursuant to the

5         Federal Rules of Civil Procedure," *Weber v. Finker, 554 F.3d 1379, 1383 (11th Cir.*

6         *2009)*, so long as the order does not prescribe the practice and procedure of the

7         foreign country or the international tribunal.

8    **B.  Applicant Has Met the § 1782(a) Statutory Requirements**

9    6.   The complaints pending and ongoing investigations by the South African Police

10        Services – Serious Commercial Crimes (SAPA # 3471/1/2019) is a foreign

11        proceeding. *See 28 U.S.C. § 1782(a) and In re Letters of Request to Examine*

12        *Witnesses, 59 F.R.D. 625, 629 (N.D. Cal. 1973)* ("crucial requirement is that the

13        foreign body exercise adjudicative power and have an adjudicative purpose").

14   7.   Applicant is the complainant and a party to the foreign proceeding. *See 28 U.S.C.*

15        *§ 1782(a) and Intel, 542 U.S. at 256* (stating that an interested person under §

16        1782 "plainly reaches beyond the universe of persons designated 'litigant,'"

17        although there is "[n]o doubt [that] litigants are included among and may be the

18        most common example").

19   8.   Applicant seeks only limited evidence in the form of witness testimony and

20        production of documents relevant to the above referenced 12 transfers through the

21        above three accounts at / through WELLS FARGO from December 2016 to

22        November 2017 (as identified in Par. 21) that the South African Police Services –

1   Serious Commercial Crimes (SAPA # 3471/1/2019) will be able to identify

2   and prosecute all the person(s) and/or entities in addition to the person(s) already

3   being investigated and who created the fake and false domain names and

4   documents.

5   9.  Applicant seeks discovery from The Witness Bank WELLS FARGO related to

6   the above referenced 12 transfers through the above three accounts at / through

7   WELLS FARGO from December 2016 to November 2017 (as identified in Par.

8   21) and that information is located and can be found in this District. *See 28 U.S.C.*

9   *§ 1782(a).*

10  **C. Discretionary Factors Favor Granting Applicant's § 1782 Application**

11  1.  **Witnesses are Outside Jurisdictional Reach of South African Authorities**

12  a.  The Witness Bank WELLS FARGO is not the subject of the criminal

13  investigations pending in South Africa.

14  b.  The Supreme Court held that since "nonparticipants in the foreign proceeding

15  may be outside the foreign tribunal's jurisdictional reach ... , their evidence,

16  available in the United States, may be unobtainable absent § 1782(a) aid."

17  *Intel, 542 U.S. at 264.*

18  c.  A foreign tribunal has jurisdiction over those appearing before it and can itself

19  order them to produce evidence. In contrast, nonparticipants in the foreign

20  proceeding may be outside the foreign tribunal's jurisdictional reach; hence,

21  their evidence, available in the United States, may be unobtainable absent §

22  1782(a) aid. *Id. at 264.*

1         d. As such, the relevant evidence, documents and information in WELLS

2             FARGO's possession, custody and control are not in the possession of the

3             foreign tribunal and would be accessible without judicial assistance in this

4             jurisdiction. *See In re Chevron Corp., 2010 U.S. Dist. LEXIS 47034, at \*20*

5             *(noting that Ecuadorian court and tribunal lacked jurisdiction to compel the*

6             *individual, who was located in the district and not a party to the foreign*

7             *proceedings, to produce the material sought)* and *In re Microsoft Corp., 428 F.*

8             *Supp. 2d 188, 194 (S.D.N.Y. 2006) (finding section 1782 assistance*

9             *unnecessary and improper where the discovery requested was already in the*

10            *foreign tribunal's possession).*

11     2. **Nature and Receptivity of South African Authorities & Tribunals**

12         a. Section 1782 (a) specifically provides "*The district court of the district in*

13             *which a person resides or is found may order him to give his testimony or*

14             *statement or to produce a document or other thing for use in a proceeding in*

15             *a foreign or international tribunal, including criminal investigations*

16             *conducted before formal accusation . . . .* "

17         b. Section 1782 also authorizes and encourages judicial assistance even as to

18             foreign proceedings that have not yet commenced or advanced. See *In re:*

19             *Clerici at 1333 n. 12 (citing Intel, 542 U.S. at 248-49).*

20         c. Section 1782(a) contains no threshold requirement that evidence sought from

21             a federal district court would be discoverable under the law governing the

22             foreign proceeding. See *Intel, 543 U.S. at 247; see also In re Clerici, 481 F.3d*

---

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Bank Wells
Fargo for use in a Foreign Tribunal and Proceeding - - - - *Page 20*

1    *at 1333 n.12.*

2    d.  Applicant needs not meet a foreign discovery requirement, prior to being

3        entitled to assistance under section 1782.  *See In re Application of Winning,*

4        *2010 WL 1796579 at \*10, n.7.*

5    e.  Further, the officers leading the investigations by The South African Police

6        Services – Serious Commercial Crimes (SAPA # 3471/1/2019) have informed

7        Applicant that they welcome the evidence he should be able to secure from

8        this 1782 Application and that they will share that information with the South

9        African Department of Justice and South Africa's Branch of Interpol, who

10       will also be investigating.

11   3.  **Applicant Is Not Attempting to Circumvent**
12       **South African Proof Gathering Restrictions and Policies**
13
14   a.  Applicant is not attempting to circumvent foreign proof-gathering

15       mechanisms in its efforts to discover the true identities of the persons or

16       entities behind the internet fraud that was perpetrated against Applicant and

17       does not have to prove receptivity to show they are not attempting to

18       circumvent foreign proof-gathering mechanisms. *See, e.g., In re Chevron, 762*

19       *F. Supp. 2d 242, 252 (D. Mass. 2010).*

20   b.  Applicants' request for judicial assistance is only so he can assist in obtaining

21       the documents needed to show the true identities of the persons or entities

22       behind the internet fraud that was perpetrated against Applicant that are the

23       subject of the South African Police Services – Serious Commercial Crimes

1    (SAPA # 3471/1/2019) investigation.  *See In re Application of Winning, 2010*

2    *WL 1796579 at \*10.*

3    4.  **Applicant Is Not Made in Bad Faith, for Purposes of Harassment or is part**
4        **of a "Fishing Expedition"**
5
6        a.  In considering applications for 28 USC 1782 judicial relief, district court may

7            consider whether an application contains "unduly intrusive or burdensome

8            requests," Intel Corp., 542 U.S. at 265, is "made in bad faith, for the purpose

9            of harassment," Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1101 n.6

10           (2d Cir. 1995); In re Request for Assistance from Ministry of Legal Affairs of

11           Trinidad and Tobago, 848 F.2d 1151, 1156 (11th Cir. 1988), abrogated on a

12           different ground by Intel Corp., 542 U.S. at 259; and Matter of Application of

13           O2CNI Co., Ltd., Case No. C 13–80125 CRB (LB), 2013 WL 5826730, at

14           *15–16 (N.D.Cal. Oct. 29, 2013)

15       b.  Applicant is not attempting to circumvent foreign proof-gathering

16           mechanisms in its efforts to discover the true identities of the persons or

17           entities behind the internet fraud that was perpetrated against Applicant and

18           does not have to prove receptivity to show they are not attempting to

19           circumvent foreign proof-gathering mechanisms. *See, e.g., In re Chevron, 762*

20           *F. Supp. 2d 242, 252 (D. Mass. 2010).*

21       c.  Applicant seeks only the information relevant to the above referenced 12

22           transfers through the above three accounts at / through WELLS FARGO from

23           December 2016 to November 2017 (as identified in Par. 21) that the South

1    African Police Services – Serious Commercial Crimes (SAPA # 3471/1/2019)

2    will be able to use to identify and prosecute all the person(s) and/or entities in

3    addition to the person(s) already being investigated and who created the fake

4    and false domain names and documents.

5    **5.  <u>Application Not Unduly Burdensome or Intrusive</u>**

6

7    a.  The requests made by Applicant are narrowly tailored to only testimony,

8    information, documents and evidence that are directly related to the above

9    referenced 12 transfers through the above three accounts at / through WELLS

10    FARGO from December 2016 to November 2017 (as identified in Par. 21)

11    that the South African Police Services – Serious Commercial Crimes Unit

12    Investigation (SAPA # 3471/1/2019) and those documents are / should be in

13    the possession, custody and control of The Witness Bank WELLS FARGO

14    and as such the request are neither overly broad nor burdensome. *See In re*

15    *Consorcio Ecuatoriano, 2012 WL 2369166,at \*20 n.7 and Intel, 542 U.S. at*

16    *265.*

17    b.  The evidence requested is "relevant to the foreign proceeding", to wit: the

18    foreign proceedings by the South African Police Services – Serious

19    Commercial Crimes Unit Investigation (SAPA # 3471/1/2019). *See In re Dr.*

20    *Braga, 789 F. Supp. 2d at 1304; compare In re Consorcio Ecuatoriano, 2012*

21    *WL 2369166 at \*24 (holding that the discovery is plainly relevant to the*

22    *foreign proceedings where they formed the basis for the defenses in those*

23    *proceedings), Kang v. Noro- Moseley Partners, 246 Fed. App'x. 662, 664*

1                  *(11th Cir. 2007) (denial only due to "irrelevance of requested discovery to the*

2                  *nature of the foreign proceedings").*

3        c.   Applicants' requests are not unduly intrusive and seek only testimony,

4             information, documents and evidence related to the true identities of the

5             persons or entities behind the internet fraud to which Applicant fell victim and

6             with documents are highly relevant to the issues being considered in the

7             foreign proceeding by the South African Police Services – Serious

8             Commercial Crimes Unit Investigation (SAPA # 3471/1/2019).

9        d.  Because The Witness Bank WELLS FARGO is not participant in or subject to

10          the jurisdiction of the South African investigating authorities, it is uncertain

11          that the relevant information related to the true identities of the persons and

12          entities behind the internet fraud against Applicant can be accessed in the

13          absence of the granting of this request, as such are "outside the foreign

14          tribunal's jurisdictional reach." *See Intel, 542 U.S. at 244.*

15        e.  The documents in The Witness Bank WELLS FARGO's possession, custody

16          and control carry sufficient relevance and evidentiary value and providing

17          them does not subject it to undue burden. *See Fed. R. Civ. P. 45(c)(3)(iv),*

18          *Int'l Ass'n of Machinists and Aerospace Workers v. P&B Transp., 2007 WL*

19          *4145974, at \*2 (M.D. Fla. 2007); Fadalla v. Life Automotive Products, Inc.,*

20          *258 F.R.D. 501, 504 (M.D. Fla. 2007) (citing Wiwa v. Royal Dutch Petroleum*

21          *Co., 392 F.3d 812, 818 (5th Cir. 2004).*

22        f.   The discovery requests of Applicant are sufficiently tailored and directly

1    relate to the foreign proceedings and are limited to the above referenced 12

2    transfers through the above three accounts at / through WELLS FARGO from

3    December 2016 to November 2017 (as identified in Par. 21) so that the South

4    African Police Services – Serious Commercial Crimes Unit Investigation

5    (SAPA # 3471/1/2019) can continue and expand its investigations and

6    prosecutions to also include persons and entities (other than those already

7    identified) and what relationship the above transfers through WELLS FARGO

8    were part of the internet fraud against Applicant. *See In re Consorcio*

9    *Ecuatoriano, 2012 WL 2369166 at \*25 (holding that discovery was*

10    *appropriately tailored as it "limit[ed] the request to information" within a six*

11    *year time period relating to one specific contract and the deposition of a*

12    *person most knowledgeable), with Advanced Micro Devices, Inc. v. Intel*

13    *Corp., 2004 U.S. Dist. LEXIS 21437 (on remand from the Supreme Court, the*

14    *district court found the 1782 application to be "unduly intrusive and*

15    *burdensome [since there was] . . . no attempt to tailor its application to the*

16    *subject matter of the EC Complaint").*

17    **6.  Applicant's Requests Satisfies Fed. R. Civ. P. Rules 26 & 45 Requirements**

19    **a.  FRCP Rule 26**

21    i.  Discovery under § 1782 is guided by the applicable standards found in the

22    Federal Rules of Civil Procedure. *See 28 U.S.C. § 1782* (providing that,

23    "[t]o the extent that the order does not prescribe otherwise, the testimony or

24    statement shall be taken, and the document or other thing produced, in

1       accordance with the Federal Rules of Civil Procedure).

2    ii.   A court may authorize early discovery for the parties' and witnesses'

3          convenience and in the interests of justice. Fed. R. Civ. P. 26(d). Courts in

4          this district generally consider whether a plaintiff has shown "good cause"

5          for the early discovery. *See, e.g., IO Group, Inc. v. Does 1-65, 2010 WL*

6          *4055667, at \*2 (N.D. Cal. 2010); Solarbridge Tech. v. John Doe, 2010 WL*

7          *3419189 (N.D. Cal. 2010); Semitool, Inc. v. Tokyo Electron America, Inc.,*

8          *208 F.R.D. 273, 275-77 (N.D. Cal. 2002).*

9    iii.  The evidence needed by Applicants is in the possession, custody and control

10         of The Witness Bank WELLS FARGO and is limited to identifying

11         information, such as names, addresses and contact information of the

12         persons and entities related to the above referenced 12 transfers through the

13         above three accounts at / through WELLS FARGO from December 2016 to

14         November 2017 (as identified in Par. 21) that is part of the South African

15         Police Services – Serious Commercial Crimes Unit Investigation (SAPA #

16         3471/1/2019) and which will also be part of the investigations and

17         prosecutions to include persons and entities (other than those already

18         identified) who were part of the internet fraud against Applicant, and what

19         relationship the above transfers through WELLS FARGO had on the fake,

20         false and fraudulent emails, domain names and documents that were used to

21         defraud Applicant, most of which originated in or were sent from South

22         Africa. As such, the request does not violate the requirements of Fed. R.

1       Civ. P. Rule 26.

2       **b.  FRCP Rule 45**

3

4         i.  Under FRCP Rule 45(a)(1)(C) a subpoena may command a nonparty served

5           to produce documents that are in its "possession, custody, or control."

6        ii.  "Control is defined not only as possession, but as the legal right to obtain

7           the documents requested upon demand." *Searock v. Stripling, 736 F.2d 650,*

8           *653 (2d Cir. 1984).* "Control" may also be found where an entity has

9           "access to" and the "ability to obtain the documents." *Bank of New York v.*

10         *Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 144 (S.D.N.Y.*

11         *1997); see also, e.g., In re Ski Train Fire of November 11, 2000 Kaprun*

12         *Austria, 2006 WL 1328259, \*5 (S.D.N.Y. 2006) (same); Addamax Corp. v.*

13         *Open Software Found., Inc., 148 F.R.D. 462, 467 (D. Mass. 1993).*

14       iii.  "Access" and "ability to obtain documents" is found where

15          "documents ordinarily flow freely between" persons or entities. *Hunter*

16          *Douglas, Inc. v. Comfortex Corp., No. CIV. A. M8-85, 1999 WL 14007, at*

17          *\*3 (S.D.N.Y. Jan. 11, 1999).*

18       iv.  The evidence needed by Applicant is or should be in the possession, custody

19         and control of The Witness Bank WELLS FARGO as the evidence relates

20         only to the above referenced 12 transfers through the above three accounts

21         at / through WELLS FARGO from December 2016 to November 2017 (as

22         identified in Par. 21) which are included in the South African Police

23         Services – Serious Commercial Crimes Unit Investigation (SAPA #

---------------------------------------------------------------------------------------------------------------------------------

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from Witness Bank Wells Fargo for use in a Foreign Tribunal and Proceeding - - - - *Page 27*

1      3471/1/2019)

2

3    VIII.   **CONCLUSION**

4         **WHEREFORE,** in view of the foregoing, Applicant prays (i) for an Order (in the form

5    attached) directing / permitting the issuance of subpoenas duces tecum (in the forms attached) to

6    The Witness Bank to appear, testify and/or produce the limited categories of testimony,

7    information, documents, information and records and (ii) for such other and further relief as is

8    just and appropriate and consistent with 28 U.S.C. § 1782.

9
10
11                                          Respectfully submitted,
12
13
14   Dated: February 20 , 2019
15                                          Edward D. Fagan, Pro Se
16                                          590 NE Wavecrest Way
17                                          Boca Raton, FL. 33432
18                                          Tel. (561) 757-5432
19                                          Email: faganinternational@gmail.com
20                                                         Applicant Pro Se

---

# EXHIBIT 1

SOUTH AFRICAN POLICE SERVICE · SUID-AFRIKAANSE POLISIEDIENS

# CASE DOCKET · SAAKDOSSIER

Station: Simonville

Case docket: X

2018 · 04 · 04 · 01 · 04 · 2018 · 05 · 04

Mr E D FAGAN

Tel no: 082 923 1/250

| Nature and description of offence Aard en beskrywing van misdryf | Bond code Misdaad kode | Nature of property Aard van eiendom | Value Damage Waarde/Skade | Value Recovered Waarde teruggevind |
|---|---|---|---|---|
| FRAUD | | R 6000 000 - 00 | | |
| | | | | |
| | | | | |

## FINDING/RESULT OF TRIAL · BEVINDING/UITSLAG VAN VERHOOR

## EXHIBITS · BEWYSSTUKKE

**SOUTH AFRICAN POLICE SERVICE**   **SUID-AFRIKAANSE POLISIEDIENS**

SAPS 3M(1)
SAPS

**STATEMENT • VERKLARING**

Station / Stasie: _Lynnville_

CAS nr / MAS nr:

**PARTICULARS OF OFFENCE/INCIDENT • BESONDERHEDE VAN MISDRYF/VOORVAL**

Date and time of offence/incident
Datum en tyd van misdryf/voorval: 2 0 1 8 - 0 4 - 0 4

Period between / Periode tussen: 0 8 7 8

0 8 0 6 - 2 0 1 8 - 0 6 - 0 4

Descryption of Offence/incident
Beskrywing van Misdryf/voorval: _FRAUD_

Method used/Entrance gained
Metode gebruik/Toegang verkry: _Email_

Type of instrument used
Tipe instrument gebruik: _Electronic Communication_

**SCENE OF CRIME • TONEEL VAN MISDAAD**

Reference: Name of place
Fussen: Plekneam:

and: Name of place
en: Plekneam:

Or / Of:

Street name
Straatnaam: _5. Myrtile_

Building farm/plot/place
Gebou/plaas/plot/plek:

Suburb/Extension/Area
Voorstad/Uitbreiding/Gebied: _Sunnyside_

Town/City
Dorp/Stad: _Pretoria_

Postal Code
Poskode:

Geographical block nr
Geografiese blok nr:

Type of premises
Tipe perseel:

_2019-01-26_
Date/Datum

_[signature]_
Signature/Handtekening

In a case of theft of a vehicle this statement must be continued on form SAPS 3M(a).
In a case of theft of a firearm this statement must be continued on form SAPS 3M(b).
In all other cases this statement must be continued on plain foto paper.

Page 1

SOUTH AFRICAN POLICE SERVICE

APPLICATION TO STATEMENT / ACKNOWLEDGEMENT BY COMPLAINANT

**Title:** MR

EDWARD   DAVIS   FAGAN

5 0 5 6 0 8 9 7 1

1 9 5 2 1 0 2 0

AMERICAN          -6 6

345 LLEIROOS

Linecook
Pretoria

082 92 3125 00

STONE   WAVE   CREST   WAY

BOCA   RATON
FLORIDA

+1 561 4000287.

Would you like to receive information regarding this case via court
Will it obliging to verbal and oral the next working per case?     Yes / Ja   No / Nee

CONTACT PERSON (IF APPLICABLE) • KONTAK PERSOON (INDIEN VAN TOEPASSING)

Title
Titel

Telephone number   Home
Telefoonnommer     Huis   Code

Initials
Voorletters

Surname
Van

Work   Code
Werk

I, Edward Davis Tagore Dalu under oath in my city

I am an adult male passport no 5036 08731, 46 years old, residing at 345 Uhuru Road, Dar-es-salaam, Tanzania. 082 9231250 or +256140002097.

On the 2018-09-04 at about 09:46 Mrs Cynthia Medeiros, she pretended to be Chase bank and the federal Deposit Insurance Corporation. she instructed us to transfer money in order to get the release of the inheritance money; Various monies to enable to release the inheritance funds.

The total amount we deposited is 6.000.000 usa Dollars, the reason she convinced us to send the money is by creating the false domain name and false documents. The domain name is drvdissore.com, which she turned it into Chase bank. the second domain name is tfdic.com, which she turned into federal deposit insurance corporation FDIC.

The lady mentioned on the statements Mr Cynthia Medeiros, cell no 0810027970 she is the suspect. I am attaching all the relevant documents.

Edward Davis Tagore

I gave no-one permission to do
stand against me and I desire
an investigation of the police.

I know and understand the contents
of this Statement. I have no objection
to be taking the prescribed oath.
I consider the prescribed oath to
be binding on my conscience.

*Arnold A. Jayn*

*Arnold Jayn*

# EXHIBIT 2

# ASSIGNMENT
## SECTION 1 - THE PARTIES

### Party # 1 – R.W. Daneluk - Assignor

    R. W. Daneluk (D/O/B Nov 3, 1937 and located at 10504 100 Avenue, Fort St. John, BC V1J 1Z2 CANADA (hereinafter "Daneluk" or "Party # 1") is the owner of 100% of the interests and rights to recovery and ownership of certain claims for recovery of monies that were paid and sent by international wire transfers between 2016 to 2018 to various persons, entities, governmental institutions and financial institutions and which monies (hereinafter "Monies Paid / Wired") were paid and sent from, to and through certain banks and financial institutions located in Canada, the United States and elsewhere in the world as part of the purchase and recovery and acquisition of various assets including but not limited to estate assets, real property, leases, contract rights, outstanding contract revenue, personal property, unpaid but earned income, pension and retirement plans, monies held in bank accounts, assets deposited into safe deposit boxes and vaults and other real and personal property and assets and which "Monies Paid / Wired" certain third parties in bank accounts including but not to the below listed institutions and other persons / entities who / which assisted with the transfer of monies:

### Bank and Financial Institutions Involved :

Bank of America, Bank of Montreal, Barclays, BNP Paribas, Canadian Imperial Bank of Commerce, Citibank, Chase (JP Morgan Chase), Compass Bank, Credit Registry Corp (United Bank of Africa), East West Bank, Fidelity Investments, Forte – Equity Bank, Huntington National Bank, Money Gram, MUFG Union Bank, PNC Bank, Royal Bank of Canada, Scotia Bank, Sun Trust, TD Bank, USAA, Western Union, Wells Fargo, Zhejiang Tailong Commercial Bank, The World Bank and other sending intermediary, receiving and transferor/transferee banks and institutions as may be identified in the future.

### Other Persons / Entities or Institutions :

Internet / Domain Service Providers, Lawyers, Government or Quasi-Government Agencies, Transportation Companies, Insurance Companies and such other persons / entities that were involved with the solicitation, sending and receiving of the "Monies Paid / Wired"

### Party # 2 - Edward D. Fagan - Assignee

    Edward D. Fagan (D/O/B: 20/10/52) residing at 590 NE Wavecrest Way, Boca Raton, FL 33432 and US Passport # 505608731 (hereinafter "Assignee" or "Party # 2").

## SECTION 2 - ASSIGNOR & ASSIGNEE

**2.1**    Party # 1 Daneluk hereby assigns to Party # 2 Fagan the absolute right and

Initials: _RWD_ and _AeADF_                  Page 1

authority to take actions indicated below on behalf of 100 % of Daneluk's interests in the recovery of the "Monies Paid / Wired" as described in Section 1.1 above and (i) to file administrative, regulatory, civil and criminal complaints; (ii) to make claims related to recovery of monies paid and transferred; (iii) to make claims to compel identification of the undisclosed parties to whom the paid and transferred monies may have been subsequently transferred by the banks and/or persons identified to date; and (iv) to make claims against the banks and other persons/institution who/which were involved with and or benefitted from the "Monies Paid / Wired".

    **2.2**    Upon the successful conclusion of efforts and/or claims as explained above related to recovery of "Monies Paid / Wired" or when any portion of the "Monies Paid / Wired", plus interest and other damages, are returned, Party # 2 Fagan and Party # 1 Daneluk agree that recovered monies, plus any additional interest and/or other damages, shall be deposited into a Trust or Escrow account of a mutually agreed upon lawyer or accountant in Fort Saint John, British Columbia and the monies shall be retained in such Trust or Escrow account until the parties agree upon division of the recovered monies and payment of any unpaid fees and expenses incurred.

    **2.3**    Upon the successful recovery of "Monies Paid / Wired", plus any additional interest and other damages, the parties further agree that they shall meet, discuss and agree upon an equitable and fair division of any additional monies and assets that may be recovered.

    **2.4**    The assignment shall take effect as of this date and shall last up to and including

_____.

    **2.5**    Party # 2 Fagan agrees to use his best efforts and diligence to pursue persons, entities, financial institutions, government institutions and others involved with "Monies Paid / Wired" and (i) locate and identify the entities responsible for and/or involved with the above referenced "Monies Paid / Wired", (ii) compel the return of "Monies Paid / Wired", plus appropriate interest and other damages and (iii) compel compliance of the return of other assets for which the "Monies Paid / Wired" were transferred, wired and paid.

    **2.6**    Party # 1 Daneluk and Party # 2 Fagan shall agree upon a budget and payment of all ongoing fees, expenses and costs associated with the above stated purposes. Any fees, expenses and costs that may be incurred and which have not been agreed to by the Parties shall be borne exclusively by the Party who / which was responsible for incurring the fees, expenses and costs that were not included in the agreed upon budget.

    **2.7**    This assignment is personal to Fagan and may NOT re-assigned to third parties or others without the prior written consent of Party 1.

Initials: _____ and _____                           Page 2

### SECTION 3 – CONDITION(S)

**3.1** Party # 2 Fagan has paid ten dollars (USD) and has provided other good and valuable consideration to Party # 1 Daneluk in order to purchase this Assignment.

**3.2** Party # 2 represents that he will undertake and pursue civil and criminal claims which are intended to secure the return of the "Monies Paid / Wired", to secure the payment of damages and expenses and to identify and hold responsible all persons, entities, financial institutions and / or government agencies that were involved with and / or benefited from the "Monies Paid / Wired".

**3.3** Party # 1 Daneluk understands and agrees that (i) Party # 2 Fagan is not and will not offer legal advice to Party # 1 Daneluk during the course of his work during this Assignment, (ii) Party # 1 Daneluk has his own lawyer and / or has had a chance to consult with his own lawyer prior to entering into this Assignment.

### SECTION 4 – WARRANTY

**4.1** For purposes of this Assignment, Party # 1 Daneluk hereby warranties and confirms that has the absolute right to execute this assignment and that he will provide all reasonable cooperation with the Party # 2 Fagan to assist him in the performance of the obligations contained herein.

**4.2** Insofar as legally permissible, any warranty as to Party # 2 Fagan's performance, success or results (other than Party # 2 Fagan's using its best efforts) to secure performance of the above contracts or to recover the advance fees paid or any other damages is disclaimed.

### SECTION 5 - OBLIGATION OF COOPERATION

Party # 1 Daneluk agrees to cooperate with Party # 2 Fagan with regard to the preparation of declarations, statements or evidence needed for applications to regulatory, administrative, civil and criminal investigations.

### SECTION 6 - DUTY TO CONSULT & STRATEGIZE

Party # 2 Fagan agrees to consult and strategize with Party # 1 Daneluk the efforts he will take in the performance of his obligations contained herein. Party # 2 Fagan shall also consult and strategize with Party # 2 Daneluk with regard to any responses and/or opposition to Party # 2 Fagan's efforts.

### SECTION 7 - WRITTEN FORM: CHOICE OF LAWS: SEVERABILITY

Initials: _____ and _____                                    Page 3

**7.1**     Amendments and addenda or corrections to this Assignment are not valid unless set forth in writing and notarized.

**7.2**     The Parties agree that this Assignment is governed by the laws of the United States and Canada and that in the event of any dispute related to this Assignment, the Court(s) of the United States and Canada shall both be deemed competent to hear and shall have jurisdiction over any dispute.

## SECTION 8 – DISPUTE RESOLUTION BINDING ARBITRATION

**8.1**     In the event of a dispute between the parties, prior to being able to submit the dispute to a Court, the parties agree that the dispute must first be submitted for binding (and non-appealable) Arbitration in Canada or the United States, before the Canadian Arbitration Association ( https://canadianarbitrationassociation.ca/ ) or the American Arbitration Association – ( https://www.adr.org/ ) and arbitrators shall be chosen from the list of recognized and approved arbitrators from either of those two Associations.

**8.2**     The arbitration shall be conducted in accordance with the Rules of the American Arbitration Society and/or the Canadian Arbitration Society, depending upon the choice of Arbitration Associations.

**8.3**     In the event the dispute is submitted for Arbitration, the Arbitration shall be conducted and concluded within 6 months of the date it is submitted.

## SECTION 9 – MISCELLANEOUS PROVISIONS

**9.1**     Should individual provisions or clauses of this Assignment be or become invalid in whole or in part, the remaining provisions hereof shall continue to apply. The Parties agree to act in good faith in replacing the invalid provision by agreeing upon a valid provision that most closely approximates the spirit and purpose of the invalid provision.

**9.2**     Prior to executing this Assignment, each Party has had an opportunity to consult with his / their own counsel. This Assignment is made with full authority and knowledge of its terms, conditions and presents.

**9.3**     It is agreed that Party # 1 Daneluk shall pay Party # 2 Fagan limited / reduced consulting fees and reimbursement of expenses according to a budget that shall be agreed upon by them.   In the event, Party # 2 Daneluk refuses to agree upon a budget or does not timely pay the agreed upon budgeted fees and reimbursements, Party # 2 Fagan shall be return the Assignment and suspend or cease performance of the actions contemplated herein.

Initials: _____ and _____                                    Page 4

## This Assignment is approved by the Parties as follows:

**Assignor – Party # 1**

Dated: ___JAN 18, 2019___
    Fort Saint John, British Columbia

R. W. Daneluk

Notarized By:
Dated: ___JAN 18 / 19___
    Fort Saint John, British Columbia

Notary Seal

Print Name: R.W. DANELUK  STEVEN COPE
Address: 10564 — 100 AVE  10740 10

FORT St JOHN, B.C.

Tel #: 250 — 785 — 7770  2502624537
Email: RUSS @ DANELUK.ecM
COPE@ Katerberglou cs

-------------------------------------------------

**Assignee – Party # 2**

Edward D. Fagan accepts this Assignment according to the above terms / conditions.

Dated: ___Jan. 18, 2019___
    Boca Raton, Florida

Edward D. Fagan

Notarized By:
Dated: _____
    Boca Raton, Florida

Notary Seal

Print Name: Edward D. Fagan
Address: 590 NE Wavecrest Way
Boca Raton, FL 33432

Tel #: 561-400-0287
Email: Faganinternational @
gmail.com

Initials: ___RWD___ and ___CNF___        Page 5